IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| WON SUN LEE,<br>    Plaintiff,<br><br>            v.<br><br>WON BOK LEE,<br>    Defendant. | )<br>)<br>)<br>)  Civil Action No. 4:20CV138 (RCY)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiff's Motion for Summary Judgment (ECF No. 13) and Defendant's Motion for Summary Judgment (ECF No. 18). The motions have been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will deny Plaintiff's Motion for Summary Judgment (ECF No. 13) and grant Defendant's Motion for Summary Judgment (ECF No. 18).

**I. FACTUAL ALLEGATIONS**

The parties are largely in agreement on the material facts. Won Sun Lee ("Plaintiff") and Won Bok Lee ("Defendant") are brothers. (Compl. ¶¶ 1-3, ECF No. 1.) On July 23, 2002, Defendant obtained a default judgment ("2002 Federal Judgment") against Plaintiff for $141,059.44 plus attorney's fees of $499.50. (*Id.* ¶ 6.) On May 21, 2004, Defendant filed a "Request to File Notice of Lien" in the Circuit Court of Howard County, Maryland, ("the Circuit Court") based on the 2002 Federal Judgment. (*Id.* ¶ 7.) The Circuit Court entered a notice of lien and a judgment ("State Judgment"). (*Id.* ¶ 8.) Instead of using the date of the 2002 Federal

Judgment, July 23, 2002, as the date of the State Judgment, the Circuit Court used the date of entry, June 1, 2004. (*Id.* ¶ 9.)

On July 23, 2015, Defendant filed a request to renew the State Judgment. (*Id.* ¶ 11.) Under Maryland Rule 2-625, a money judgment expires twelve years from the date of entry or the date of the most recent renewal. Md. R. 2-625. And thus, the trouble began. If the twelve-year period is determined by the date of the 2002 Federal Judgment, the State Judgment expired on July 23, 2014. However, if the twelve-year period is determined by the date the State Judgment was entered, it expired on June 1, 2016.

At this time, Plaintiff had a one-eighth interest in a parcel of land ("the Korean Property") located in South Korea. (*See* Mem. Supp. Pl. Summ. J. at 4, ECF No. 14; Decl. Won Yung Uh Ex. G at 3, 6-8, ECF No. 16-7; Mem. Supp. Def. Summ. J. at 2, ECF No. 19.) On June 10, 2015, prior to filing the request to renew the State Judgment, Defendant placed a lien on the Korean Property through the Yeoju Branch of the Suwon District Court ("the Yeoju Branch Court"). (Mem. Supp. Pl. Summ. J. at 4; Decl. Won Yung Uh Ex. G at 8; Mem. Supp. Def. Summ. J. at 3.) On August 10, 2015, Defendant placed another lien (jointly "the Korean Liens") on the Korean Property through the Yeoju Branch Court. (Mem. Supp. Pl. Summ. J. at 4; Decl. Won Yung Uh Ex. G at 8; Mem. Supp. Def. Summ. J. at 3.) Plaintiff alleges that both of the liens were based on the 2002 Federal Judgment. (Mem. Supp. Pl. Summ. J. at 4.)

On March 24, 2016, Plaintiff filed a motion to vacate renewal of judgment with the Circuit Court, claiming that the State Judgment had expired on July 23, 2014. (Compl. ¶ 13.) The Circuit Court denied the motion to vacate renewal of judgment and granted the motion for renewed judgment on June 2, 2016. (*Id.* ¶ 14.)

Plaintiff filed a notice of appeal with the Circuit Court on July 6, 2016. (*Id.* ¶ 15.) Defendant moved to strike the notice of appeal as untimely, and on August 9, 2016, the Circuit

Court struck the notice of appeal. (*Id.*) Plaintiff filed an appeal with the Maryland Court of Special Appeals on August 17, 2016, arguing that the notice of appeal was timely and that the renewed judgment should be vacated. (*Id.* ¶ 16.)

Meanwhile, in South Korea, Defendant filed a request with the Yeoju Branch Court to enforce the 2002 Federal Judgment, and the Yeoju Branch Court approved the request on January 11, 2017. (Decl. Won Yung Uh Ex. M at 2-3, ECF No. 16-13.) Plaintiff appealed this decision to the Suwon District Court, which affirmed the Yeoju Branch Court decision on April 18, 2018. (*Id.* at 4.)

On December 4, 2018, Plaintiff, and the other seven owners of the Korean Property, entered into an agreement ("the Sale Contract") with a third party. (Mem. Supp. Pl. Summ. J. at 4; Decl. Won Yung Uh Ex. I at 2-3, ECF No. 16-9.) Under the Sale Contract, one of the owners, Min Young Lee, was to act as a representative of the other seven owners. (Decl. Won Yung Uh Ex. I at 5.) The scope of her authority is unclear.

Back in the United States, on January 30, 2019, the Court of Special Appeals reversed the decision of the Circuit Court and remanded the case with instructions to vacate the renewed judgment. (*Id.* ¶ 19); *Won Sun Lee v. Won Bok Lee*, 201 A.3d 1, 18 (Md. Ct. Spec. App. 2019).[1] The court held that the 2002 Federal Judgment, and the lien created by it, expired in 2014. (Compl. ¶ 21); *Won Sun Lee*, 201 A. 3d at 18.

On March 18, 2019, Defendant filed a writ of certiorari with Maryland Court of Appeals. (Compl. ¶ 22.) Meanwhile in South Korea, Min Young Lee signed an agreement with Defendant. (Decl. Won Yung Uh Ex. I at 9.) Under the agreement, Min Young Lee would pay

---

[1] Prior to issuing that opinion, the Court of Special Appeals reversed and remanded the case to the Circuit Court, as the record did not reflect when or if the time for appeal had begun. *Won Sun Lee v. Won Bok Lee*, No. 945, 2017 WL 3634056, at *3 (Md. Ct. Spec. App. Aug. 24, 2017). When the case returned to the Court of Special Appeals, it determined that the appeal was initially premature but had become ripe, and the court proceeded to rule on the merits. *Won Sun Lee*, 201 A.3d at 8-9.

Defendant on April 13, 2019, and on June 27, 2019, to remove the Korean Liens on Plaintiff's interest in the Korean Property. (*Id.*) Min Young Lee carried out the first payment on April 23, 2019, using the portion of the sale proceeds that corresponded to Plaintiff's interest in the Korean Property. (Mem. Supp. Pl. Summ. J. at 5.)

The Maryland Court of Appeals granted the writ of certiorari on May 14, 2019. (Compl. ¶ 22.) On May 23, 2019, Plaintiff and Min Young Lee reached an agreement where Min Young Lee would not pay Defendant until the legal matters in the United States had concluded. (Decl. Won Yung Uh Ex. K at 2, ECF No. 16-11.) Despite this agreement, Min Young Lee still provided the second payment to Defendant on June 27, 2019. (Mem. Supp. Pl. Summ. J. at 5.) Once again, this payment was made using the portion of the sale proceeds from Plaintiff's interest in the Korean Property. (*Id.*) At some point after this payment, Plaintiff sued Min Young Lee in the Yeoju Branch Court, alleging that Min Young Lee sold his interest in the Korean Property without his consent and committed embezzlement by using that money to pay Defendant. (Decl. Won Yung Uh Ex. M at 6-7).

On January 23, 2020, the Court of Appeals affirmed the ruling of the Special Court of Appeals and held that the 2002 Federal Judgment expired in 2014. (Compl. ¶ 24); *Won Bok Lee v. Won Sun Lee*, 223 A.3d 478, 504 (Md. 2020). On April 23, 2020, Plaintiff demanded the return of the money paid to Defendant to remove the Korean Liens on the Korean Property, claiming that those payments were collected under a void decree. (Compl. ¶ 26.) Defendant did not respond to this request. (*Id.* ¶ 27.)

On November 19, 2020, the Yeoju Branch Court issued an opinion dismissing Plaintiff's claims against Min Young Lee. (Decl. Won Yung Uh Ex. M at 1, 7-10.) In dismissing the claims, the Yeoju Branch Court denied Plaintiff's request for restitution from Min Young Lee. (*Id.* at 10.)

## II. PROCEDURAL HISTORY

On July 20, 2020, Plaintiff filed a Complaint. (ECF No. 1.) Defendant filed an Answer on August 19, 2020. (ECF No. 5.) On August 19, 2020, Defendant filed a Motion to Transfer. (ECF No. 6.) Plaintiff consented to the motion, and the case was transferred from the Richmond Division to the Newport News Division on September 1, 2020. (ECF Nos. 8-9.)

On May 14, 2021, Plaintiff filed a Motion for Summary Judgment and a Memorandum in Support. (ECF Nos. 13-14.) Defendant filed a Motion for Summary Judgment and a Memorandum in Support on the same day. (ECF Nos. 18-19.) Defendant filed a Memorandum in Opposition to Plaintiff's Motion for Summary Judgment on May 28, 2021. (ECF No. 23.) On the same day, Plaintiff filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment (ECF No. 25.) Plaintiff filed a Reply on June 3, 2021. (ECF No. 26.)

## III. LEGAL STANDARD

The Federal Rules of Civil Procedure provide the standard for this matter. Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). The evidence must be viewed "in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

When both parties have moved for summary judgment, the Court must review "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Republic W. Ins. Co. v. Williams*, 212 Fed. App'x. 235, 237 (4th Cir. 2007).

"The fact that both sides moved for summary judgment does not establish that there is no issue of fact and require that judgment be granted for one side or the other." *Am. Fid. & Cas. Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965).

## IV. DISCUSSION

Each of the parties' Motions for Summary Judgment raise the same arguments. The Court has reviewed "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *See Republic W. Ins. Co. v. Williams*, 212 Fed. App'x. 235, 237 (4th Cir. 2007). However, in the interests of clarity, the Court will discuss the common issues raised by the two motions together. Furthermore, the Court finds that there are no genuine issues of material fact and limits its discussion to the two dispositive questions of law: restitution and comity.[2]

### A. Restitution

#### 1. Plaintiff's Position

Plaintiff argues that courts have the inherent power to order restitution and that it is "a long-held law in Virginia that a party paying money under a judgment or decree subsequently set aside is entitled to restitution of the money paid." (Mem. Supp. Pl. Summ. J. at 6.) Plaintiff contends that the 2002 Federal Judgment expired on July 23, 2014. (*Id.*) After the expiration of the 2002 Federal Judgment, Defendant placed the Korean Liens on Plaintiff's interest in the Korean Property. (*Id.* at 7.) When Min Young Lee paid Defendant using Plaintiff's portion of the money derived from the sale of the Korean Property, Defendant effectively collected on the 2002 Federal Judgment. (*Id.*) The Maryland Court of Appeals affirmed the lower court ruling

---

[2] Restitution is the only cause of action raised by Plaintiff's Complaint. (Compl. ¶¶ 28-35.) Defendant's Answer, Memorandum in Support of Defendant's Motion for Summary Judgment, and Memorandum in Opposition to Plaintiff's Motion for Summary Judgment raise the affirmative defenses of *res judicata*, comity, and accord and satisfaction. (*See* ECF Nos. 1, 19, 25.) Given that Defendant needs to succeed only on one affirmative defense to defeat Plaintiff's Motion for Summary Judgment and prevail on his own Motion for Summary Judgment, only comity will be discussed.

that the 2002 Federal Judgment was expired, and Defendant has not returned the collected funds to Plaintiff. (*Id.*) Thus, Defendant has collected on a set aside or vacated judgment, and Plaintiff is entitled to restitution. (*Id.*)

### 2. Defendant's Position

Defendant argues that the 2002 Federal Judgment was not set aside or reversed. (Mem. Opp'n Pl. Summ. J. at 9, ECF No. 23.) Defendant contends that the Maryland Court of Appeals "merely disallowed the renewal of a lien on Plaintiff's property in Howard County, Maryland." (*Id.*) Defendant contends that the Yeoju Branch Court placed the Korean Liens on Plaintiff's interest in the Korean Property based on the underlying debt from the 2002 Federal Judgment, not the judgment itself. (*Id.* at 9-10).

### 3. The Court will not Exercise Its Discretion to Order Restitution

The equitable jurisdiction of the Court includes the power to order restitution. *See Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946); *Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*, 249 U.S. 134, 146 (1919); *Northwestern Fuel Co. v. Brock*, 139 U.S. 216, 219 (1891); *Gerald M. Moore & Son v. Drewry & Assocs.*, 945 F. Supp. 117, 120 (E.D. Va. 1996). Equity "treat[s] that as done which ought to have been done" and "disregard[s] that which ought not have been done." *Howe v. Varity Corp.*, 36 F.3d 746, 756 (8th Cir. 1994). The very goal of equity is "to render natural right or justice." *Lamb v. Butler*, 95 S.E.2d 239, 247 (Va. 1956). As such, equitable remedies are "a special blend of what is necessary, what is fair, and what is workable." *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973).

"The purpose of restitution is to restore the status quo and return the parties to the positions they occupied before the transactions at issue occurred." *U.S. Commodity Futures Trading Comm'n v. Smith*, No. 1:10cv9, 2012 WL 1642200, at *13 (W.D. Va. Apr. 16, 2012); *see Porter*, 328 U.S. at 402 (explaining that restitution serves the "public interest by restoring the

status quo and ordering the return of that which rightfully belongs to the purchaser or tenant."); *United States v. Long*, 537 F.2d 1151, 1153 (4th Cir. 1975) ("[a] person obtains restitution when he is restored to the position he formerly occupied either by the return of something which he formerly had or by the receipt of its equivalent in money.") (quoting Restatement (First) of Restitution § 1 (Am. Law Inst. 1937)). Equity calls for a court "to exercise discretion in determining whether restitution is proper." *Alliance for Water Efficiency v. Fryer*, No. 14 C 115, 2017 WL 203337, at *4 (N.D. Ill. Jan. 18, 2017) (citing *Porter*, 328 U.S. at 400). Restitution is ordered based on the discretion of the court, and, "while it may not be exercised arbitrarily, it allows for two decision makers to reach opposite conclusions on virtually identical sets of facts." *Id.* (citing *Mejia v. Cook County*, 650 F.3d 631, 635 (7th Cir. 2011)).

The use of restitution to remedy a situation where a party has previously satisfied a judgment that is subsequently reversed or set aside is widely accepted. Under the Restatement (First) of Restitution § 74:

> A person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final; if the judgment is modified, there is a right to restitution of the excess.

Restatement (First) of Restitution § 74: Judgments Subsequently Reversed (Am. Law Inst. 1937). Restatement (Third) of Restitution and Unjust Enrichment § 18 is similar, as it instructs, "[a] transfer or taking of property, in compliance with or otherwise in consequence of a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim in restitution as necessary to avoid unjust enrichment." Restatement (Third) of Restitution and Unjust Enrichment § 18: Judgment Subsequently Reversed or Avoid. (Am. Law Inst. 2011). This Restatement section includes a particularly helpful illustration:

> A sues B to enforce a $5000 debt. B defends on the basis of the statute of limitations. The trial court holds that the statute does not bar the action, and A

> obtains a judgment that B satisfies. A's judgment is reversed on appeal, on the ground that the action was time-barred. It is conceded that B's debt to A was legal and valid, and that it would have been enforceable were it not for the statute of limitations. B is entitled to restitution nevertheless.

*Id.* illustration 8.  The Maryland Rule that deems an order void twelve years after it was entered or last renewed operates like a statute of limitations precluding enforcement of a judgment. *See* Md. R. 2-625.  Since the 2002 Federal Judgment expired, it would seem that Plaintiff is entitled to restitution.

While it is clear that courts have the equitable power to "to correct that which has been wrongfully done by virtue of *its* process," *Gerald M. Moore & Son*, 945 F. Supp. at 120 (quoting *Arkadelphia Milling Co.* 49 U.S. at 146 (1919)) (emphasis added), it is less clear whether courts have the inherent power to order restitution to remedy payments made before a *different* court reversed that court's own judgment.  The Court has conducted an exhaustive search, and it has found no instance of a court ordering restitution to remedy payment of a void, vacated, or set aside judgment from a different jurisdiction.

The Court found two routes for restitution in this situation: (1) the appellate court over the trial court that issued the original order, and (2) the trial court itself.  In *Northwestern Fuel Co. v. Brock*, the Supreme Court addressed the issue of whether district courts can order restitution when an appellate court has not remanded the case.  In that case, the "alleged error of the court below [was] that it had no jurisdiction to render judgment for restitution of the money collected on the reversed judgment." *Northwestern Fuel Co.*, 139 U.S. at 219.  The Supreme Court stated:

> [J]urisdiction exercised by the [district court] was only to correct by *its own order* that which, according to the judgment of its appellate court, it had no authority to do in the first instance; and the power is inherent in every court, while the subject of controversy is in its custody, and the parties are before it, *to undo what it had no authority to do originally*, and in which *it, therefore, acted* erroneously, and to restore, so far as possible, the parties to their former position. Jurisdiction to correct what had been wrongfully done must remain with the court so long as the

9

> parties and the case are properly before it, either in the first instance or when remanded to it by an appellate tribunal.

*Id.* (emphasis added). The thrust of the decision was clarifying that district courts had the inherent power to fix *their own mistakes*. Further, the Court noted:

> The same doctrine is sustained in the several state courts of the country, all recognizing the power of a court, *whose judgment is set aside on its own motion or reversed by order of an appellate tribunal*, to direct restitution, so far as practicable, of all property and rights which have been lost by the erroneous judgment.

*Id.* at 221 (emphasis added). Once again, the Supreme Court framed the inherent equitable power to fix the aftereffects of a vacated or reversed judgment with the court, or its corresponding appellate court, that originally issued the judgment.

In *Gerald M. Moore & Son v. Drewry & Assocs.*, the Court found that the defendant was liable for negligence, and damages were comprised solely of economic loss. 945 F. Supp. at 119. After certifying a question to the Supreme Court of Virginia, the Fourth Circuit reversed the decision and found that damages for negligence cannot be based solely on economic loss. *Id.* However, the defendant had not posted a supersedeas bond and had paid the judgment before the decision was reversed. *Id.* The plaintiff argued that the district court lost jurisdiction once the case was appealed and did not gain jurisdiction as the case had not been remanded. *Id.* at 120. The district court held that it did have jurisdiction to order restitution. *Id.* at 122. In explaining the decision, the court noted "[t]he reversing tribunal can itself direct restitution or the tribunal which is reversed can on motion or upon its own initiative direct that restitution can be made." *Id.* at 121. It described the situation as "correct[ing] its own mistake." *Id.* In *Caldwell v. Puget Sound Electrical Apprenticeship & Training Trust*, the Eighth Circuit held that jurisdiction returns to the district court after the appellate court issues its mandate, and the district court can then order restitution as long as restitution is consistent, even if not explicitly so, with the appellate court's mandate. 824 F.2d 765, 767-68 (8th Cir. 1987). These are just two of many

similar instances. In each case, the original trial court ordered restitution after *its own judgment* was voided or reversed.

The Court declines to rule on whether it has the power to award restitution based on the expiration of either the 2002 Judgment[3] or the State Judgment. Regardless of whether it possesses the power to do so, the Court declines to exercise its discretion to order restitution in the current action for two reasons. First, in keeping with the jurisprudential history of this issue, the Court finds that the decision is more appropriately and equitably left to the court that originally issued the judgment. Second, the issue of comity provides sufficient reasons to decline this discretionary action.

**B. Comity**

**1. Defendant's Position**

Defendant argues that Plaintiff could fully participate in the litigation in the South Korean courts, so this Court should abide by the principle of comity and respect the rulings of the South Korean courts. (Mem. Supp. Def. Summ. J. at 15.) Defendant contends that he subrogated his rights to Min Young Lee, so Min Young Lee stood in his shoes during the litigation with Plaintiff. (Mem. Opp'n Pl. Summ. J. at 10-11.) As a subrogee, Min Young Lee was bound to the same defenses as those that could be asserted by Defendant. (*Id.* at 12.) Defendant argues that the Court should give deference to the Yeoju Branch Court's ruling that Min Young Lee was the Plaintiff's agent. (Mem. Supp. Def. Summ. J. at 15.) Defendant argues that the Court should leave this issue to the South Korean legal system. (Mem. Opp'n Pl. Summ. J. at 11-12.)

---

[3] Under Federal Rule of Civil Procedure 69, "[t]he procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69. The Maryland Court of Appeals ruled that the "federal judgment was governed by Maryland law, including the provision in Maryland Rule 2-625 that a money judgment expires twelve years after its date of entry or the most recent renewal." *Won Bok Lee*, 223 A.3d at 504. Thus, the 2002 Federal Judgment should also be considered to have expired. *Id.*

### 2. Plaintiff's Position

Plaintiff argues that the Court has no obligation to respect the Yeoju Branch Court's findings of law and fact, as that case was not between Plaintiff and Defendant. (Mem. Opp'n Def. Summ. J. at 7.) Plaintiff argues that Defendant could not have subrogated his rights to Min Young Lee, as the 2002 Federal Judgment had already expired when the subrogation was alleged to have occurred. (Reply at 5, ECF No. 26.) Furthermore, Plaintiff notes that Defendant did not plead subrogation as an affirmative defense in his Answer. (*Id.*)

### 3. The Principles of Comity Prohibit the Court from Ordering Restitution

International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard to international duty and convenience and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). Comity directs courts to "tailor their remedies carefully to avoid undue interference with the domestic activities of other sovereign nations." *Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 75 (3d Cir. 1994). "International comity prohibits courts in the United States from examining the legitimacy of actions taken by another government in its territory." *Frumkin v. JA Jones, Inc.*, 129 F. Supp. 2d 370, 387 (D.N.J. 2001).

"[I]n some private international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction." *Turner Ent. Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (1994). This decision should be made "where another sovereign's interest in the proceedings is greater than the United States' interests." *ITL Int'l, Inc. v. Walton & Post, Inc.*, 741 F. Supp. 2d 1313, 1316 (S.D. Fla. 2010).

Both parties have missed the real substance of the issue in their arguments for and against comity. The litigation between Plaintiff and Min Young Lee is not the relevant focal point for the significance of comity in this action. It is the Korean Liens placed on the Korean Property by the Yeoju Branch Court. Neither side has alleged that the South Korean court system has invalidated or reversed the decision to place those liens or that South Korean legal precedent renders them void.

The Court's view of the undisputed facts makes it clear that comity prohibits the Court from ordering restitution. In a foreign nation, a foreign court placed two liens on property within its borders. During a transaction in that foreign nation, involving the foreign property, funds were used, potentially unlawfully, to dissolve the foreign liens. Under the principles of international comity, the Court must recognize the judicial decisions of the South Korean court system, give effect to those decisions, and respect the South Korean legal system's place in resolving this dispute. Regardless of the allegation that the Korean Liens are based on judicial decisions in the United States, the Court will not declare the liens to have been invalid. The interests of South Korea in the transaction are clearly predominant in this action. As such, the Court finds that comity serves as an affirmative defense to Plaintiff's action for restitution.

## V. CONCLUSION

For the reasons stated above, the Court will deny Plaintiff's Motion for Summary Judgment (ECF No. 13) and grant Defendant's Motion for Summary Judgment (ECF No. 18).

An appropriate Order shall issue.

/s/
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: March 15, 2022

13